Brooks W. Rountree v. Commissioner.
Rountree v. Commissioner
Docket No. 3377-69.
United States Tax Court
T.C. Memo 1971-32; 1971 Tax Ct. Memo LEXIS 300; 30 T.C.M. (CCH) 137; T.C.M. (RIA) 71032; February 18, 1971, Filed. *300 On May 30, 1966, the petitioner filed an amended income tax return for the taxable year, 1965, in which he calculated that he owed $45.55 in additional income taxes for that year. The respondent, in accepting the petitioner's check for $45.55, did not agree to release the petitioner from further tax liability. Held, the respondent was not bound contractually as to the amount of the petitioner's income tax liability for the year 1965 and was not estopped from issuing a statutory notice of deficiency for that year. The petitioner failed to establish that, during the year 1965, he provided over one-half of the total support for his three children, who were in the custody of his ex-wife. Held: (1) The petitioner may not claim dependency exemptions for his three children in 1965 under sections 151 and 152 of the 1954 Code (2) The petitioner may not deduct in 1965 any amounts expended for his children's medical care under section 213 of the 1954 Code. Held, further, the petitioner failed to establish that any amounts were paid by him for his own medical care, and he is therefore not entitled to a deduction under section 213 of the 1954 Code. Brooks W. Rountree, pro se, 463 Aqueduct St., *301 Akron, Ohio. John P. Graham, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The respondent determined a deficiency in the petitioner's income tax in the calendar year 1965 in the amount of $379.07. The issues presented for our decision are: (1) Whether the respondent was estopped from issuing the statutory notice in this case; (2) Whether the petitioner furnished more than one-half of the support for his three children during 1965 so as to be entitled to a $600 dependency exemption for each child under the provisions of sections 151 and 152 of the 1954 Code; and (3) Whether the petitioner is entitled to an $18.63 medical deduction under section 213 of the 1954 Code. The parties are agreed and have stipulated that (1) the correct deduction for taxes paid by the petitioner in 1965 is $152.07 (and not $187.39, as claimed by the petitioner on his return, or $144.07, as determined by the respondent in his statutory notice); (2) the correct deduction for interest paid in 1965 is $238.99, as the respondent has determined in his statutory notice (and not $232.95, as claimed by the petitioner on his return); (3) a deduction for $50 which the petitioner claimed *302 on his 1965 return as a casualty loss is not allowable, as the respondent has determined in his statutory notice; (4) additional deductions of $218.95 for alimony payments and $2 for moving expenses were allowable in the year 1965, as the respondent has determined in his statutory notice; and (5) an additional deduction of $9.95 for tax litigation expenses paid during 1965 is allowable. Findings of Fact Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits thereto are incorporated herein by this reference. At the time the petition in this case was filed with the Court, the petitioner, Brooks W. Rountree, resided in Akron, Ohio. He filed his income tax return for the taxable year 1965 with the district director of internal revenue, Cleveland, Ohio. During the year in issue, the petitioner was employed as an "insurance assistant" by the Cleveland Cliffs Iron Co. (until April, 1965) and as an insurance claims adjuster by the Maryland Casualty Co. (from July, 1965). In July of 1965, the petitioner was divorced from his wife, Juanita M. Rountree (now Mrs. Wilber E. Gray) in the proceeding, Juanita M. Rountree v. Brooks W. Rountree, Cause *303 No. 240199, Court of Common Pleas, Summit County, Ohio. The divorce action had been filed two years earlier in June of 1963. Three children were born of the petitioner's marriage to Juanita: Michael in 1951, Charles in 1958, and Meriruth in 1961. After June of 1963 and throughout the year at issue, Juanita had the custody of the children and the petitioner had reasonable visitation rights, pursuant to the order of the Court of Common Pleas. From January 1, 1965, the petitioner was under the order of the Court of Common Pleas to pay a total of $140 a month as support for the three children. As of July 1, 1965, this amount was changed to $160 a month. The petitioner actually paid $1,763.43 as court-ordered child support during 1965. Under interlocutory order of the court, Juanita, for two years prior to the divorce, was permitted to reside at the former residence of the couple on Wichert Drive in Cuyahoga Falls, Ohio. Prior to the divorce, the petitioner and his former wife both owned an undivided one-half interest in the residence and the land on which it was situated but petitioner was under court order to continue to make the mortgage payments. Pursuant to the dictates of the divorce *304 decree, the petitioner was required to transfer his interest in the house and real estate to Juanita as alimony and she was ordered to make the mortgage payments on the property thereafter. Juanita remarried in August of 1965, and she and 139 the children moved from the house in September of 1965. The house was subsequently sold. During 1965, the fair rental value of this residence was from $135 to $150 a month. From January to September 1965, the three children resided in the Wichert Drive residence with their mother. For 37 days during this period, however, Michael was a resident of the Summit County Juvenile Court Center. The cost incurred by the County to support Michael at the center for 37 days was approximately $666. During 1965, the petitioner regularly visited with his children for one day during every other weekend. On these occasions, he generally was accompanied by his sister, Mary Kay Kawecki, by his sister, Erie Slife, or by his present wife, Maritza, whom he married on January 22, 1966. Generally on such visits, the petitioner would take his children to lunch and go to the zoo, a movie, an exhibit, or an amusement park. Sometimes he would take them to a store so they *305 could make small purchases. He would provide the children with dinner and return them to their mother's home in the evening. The petitioner would pay all expenses on these visits, and he spent a total of approximately $15 on the children on each such occasion. The petitioner expended other amounts on the children during 1965. He gave them each an average of $25 on their birthdays. He spent a total of $90 ($20 of which was a cash gift to Michael) on gifts to the children at Christmas and made other small gifts during the year. The petitioner paid the premiums on the children's life insurance policies and made the following payments for medical services rendered to the children: $105 to Elliot Migdal, M.D.; $33 to William B. Rogers, M.D.; $19 to L. G. Di Julius, D.D.S.; and $7 to Green Cross General Hospital. The payments to Dr. Migdal and to Green Cross General Hospital were for services rendered to Michael. On his Federal income tax return for the year 1965, dated February 1, 1966, the petitioner claimed a $600 dependency exemption for each of his three children. In addition, he listed medical and dental expenses of $198, which, when reduced by $179.37 (3 percent of his adjusted gross *306 income), resulted in a deduction of $18.63. In an amended return for the year 1965, dated May 30, 1966, the petitioner claimed a $600 dependency exemption for only two of his children. In addition, he omitted the deduction for medical expenses that he had taken on his original return. [1] This return was received by the respondent on June 1, 1966. Along with this return, the petitioner sent a check for $45.55, [2] which the respondent negotiated. On October 18, 1968, the director of the Internal Revenue Service Center in Covington, Kentucky, sent the petitioner an unsigned notice (Form 4188) bearing the following statement: ACCOUNT ADJUSTMENT - BILL FOR TAX DUE OVERPAYMENT ON ACCOUNT BEFORE *307 ADJUSTMENT… $45.55 ADJUSTMENT COMPUTATION @TAX - INCREASE $45.55 @NET ADJUSTMENT - CHARGE $45.55 BALANCE DUE NONE The notice also indicated that a further explanation appeared on the reverse side thereof under paragraph "T." Paragraph "T" provided as follows: This notice is not the result of an audit of your return. If your return should be selected for audit, you will receive a separate notice. In his statutory notice to the petitioner, dated April 10, 1969, the respondent, basing his calculations upon the figures appearing in the petitioner's original return, dated February 1, 1966, determined a deficiency of $379.07. Among his adjustments to the petitioner's 1965 income, the respondent (1) disallowed the three dependency exemptions for the petitioner's three children "because you have not established that you provided more than half of their support," and (2) disallowed the medical expense deduction of $18.63 "because medical expenses paid for an individual who does not qualify as a dependent are not deductible." Opinion The first issue for our consideration is whether the respondent was estopped from 140 issuing the statutory notice in this case. The petitioner contends that *308 his filing of the amended return, dated May 30, 1966, constituted an offer by him that the respondent accept the $45.55 check he submitted with the return in full satisfaction of any obligation the petitioner may have had in connection with his 1965 income tax. [3] The petitioner argues that the respondent's acceptance of the "consideration" of $45.55 resulted in a binding contract, under the terms of which the respondent released and discharged the petitioner from any further income tax liability for 1965. The respondent's notice (Form 4188), dated October 18, 1968, is cited by the petitioner as support for this conclusion. The petitioner therefore believes that the respondent was foreclosed from issuing the statutory notice in the instant case. We find this argument to be totally devoid of merit. As can be seen from our findings, nothing in the amended return, dated May 30, 1966, indicated that the *309 petitioner was requesting that the respondent foreclose himself from making a subsequent audit and asserting a deficiency for the year 1965. Furthermore, there was nothing said or done by the respondent that even suggested he had such an understanding. The respondent's notice (Form 4188), instead of supporting the petitioner's allegation, makes it abundantly clear that the respondent, in accepting the $45.55 payment, expressly reserved his right to make an audit of the 1965 return. The respondent does have statutory authority to enter into a closing agreement in writing, signed by both parties, which is intended to be final and conclusive and to bind both parties as to an agreed tax liability. Section 7121; [4]Section 301.7121-1, Income Tax Regs.; see Botany Worsted Mills v. United States, 278 U.S. 282 (1929). However, the respondent's
Year Deficiency Addition to Tax Section no stretch of the imagination a closing agreement. It was not the result of an audit; it contemplated a future audit. It was a mere mechanical accounting of a voluntary payment not involving any controversy. It was not signed by either party, and it did not purport to be a binding commitment as to the amount of the *310 petitioner's income tax liability for the year 1965. The petitioner's argument that the respondent was estopped from issuing the statutory notice in this case has no basis in fact or in law, and we reject it. The petitioner next argues that he furnished more than one-half of the support for his three children, who were in the custody of his ex-wife, and that he is therefore entitled to a $600 dependency exemption for each child. During the year in issue, section 151(e)[5] *311 permitted an exemption of $600 for each of a taxpayer's dependents. The term "dependent" is defined in section 152(a) to include certain individuals "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer * * *." [6]Section 152(a)(1) includes "[a] son or daughter of the taxpayer * * *" among the individuals who can qualify for "dependent" status. The petitioner has the burden of showing the amounts he contributed to his children's support and the total amount that was expended on such support. Rose D. Seraydar, 50 T.C. 756, 760-761 (1968); Robert I. Brown, 48 T.C. 42, 43 (1967); James E. Stafford, 46 T.C. 515, 517-518 (1966); James H. Fitzner, 31 T.C. 1252, 1254 (1959). Any inadequacies in the petitioner's evidence must of necessity work to his detriment. He has the burden of proving error in the statutory notice. Welch v. Helvering, 290 U.S. 111 (1933); Rule 32 of the Rules of Practice of this Court. We are unable to ascertain from the record before us the total amount that was expended for the support of the three 141 children in 1965. The record lacks sufficient evidence as to the contribution made to such support by the petitioner's ex-wife. This deficiency in the evidence was called to the *312 petitioner's attention at the trial, yet he rested his case with the knowledge that the evidence was inadequate. The petitioner's ex-wife was present at the trial, but the petitioner chose not to call her. In view of the lack of evidence in the record, essential to petitioner's case, we must hold for the respondent. Although it is not necessary for the petitioner to establish precise amounts, cf. Theodore Milgroom, 31 T.C. 1256 (1959), we cannot even infer or approximate the total expenditures that were made for the children's support from the record before us. The petitioner has failed to prove that he furnished more than one-half of the total support for his children in 1965, and we hold that the statutory notice properly disallowed the three dependency exemptions. Finally, the petitioner argues that he is entitled to a medical expense deduction of $18.63. The petitioner's original income tax return for 1965 claimed $198 in medical expenses, which amount - less the percentage limitation of $179.37 - left the net deduction of $18.63. On brief, the petitioner asserts that he expended $174 in 1965 for the medical care of his children. We have found from the evidence that he paid only *313 $164 for such care. There is no evidence in the case as to amounts expended for the petitioner's own medical care. During the year in issue, section 213 permitted a deduction (with certain limitations) for amounts paid during the taxable year "for medical care of the taxpayer * * * or a dependent (as defined in section 152." [7] *314 In order for the petitioner to be able to deduct any of the amounts he expended for his children's medical care, he must first show that he provided over one-half of their support. Thomas G. Russoniello, 21 T.C. 828 (1954); section 1.213-1(a)(3)(i), Income Tax Regs. As we have held above in connection with the dependency issue in this case, the the dependency issue in this case, the petitioner has failed to make such a showing. Furthermore, it is apparent that expenditures of $164 do not exceed 3 percent of his adjusted gross income.
We hold, accordingly, that the respondent properly disallowed the petitioner's claimed medical deduction of $18.63 in 1965. Because of concessions made by the parties, Decision will be entered under Rule 50. Footnotes
1. The petitioner also filed another amended return for the year 1965, dated February 27, 1967. Again he took only two dependency exemptions and again he deleted the medical expense deduction. ↩
2. The original return listed an overpayment of $141.74, reflecting the difference between the tax withheld and the tax due to be paid. This amount was refunded by the Commissioner. The May, 1966 amended return showed this overpayment to be $96.19. The $45.55 figure reflects the difference between $141.74 and $96.19.↩
3. On brief, the petitioner states that the respondent accepted the check (sent by the petitioner on May 30, 1966), in full satisfaction of the $379.07 deficiency in this case. The petitioner apparently overlooks the fact that the deficiency herein was not determined until April 10, 1969.↩
4. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
5. Section 151(e) was amended by Public Law 91-172 to raise the exemption to $625, effective for taxable years beginning after December 31, 1969, and before January 1, 1971. Additional increases in the exemption are made by Public Law 91-172 in subsequent taxable years. 6. See section 152(e)↩ - "Support Test in Case of Child of Divorced Parents, Et Cetera." - which was added to the 1954 Code by Public Law 90-78. Since this new section is applicable only with respect to taxable years beginning after December 31, 1966, it is not discussed herein.
7. This language was slightly altered without obvious substantive effect by Public Law 89-97. This section now reads: "for medical care of the taxpayer * * * and dependents (as defined in section 152) * * *." The amendment is effective in taxable years beginning after December 31, 1966. Both the old and new versions of the statute contain, in section 213(a) (1)↩, a provision that the allowable medical expenses are deductible only to the extent they exceed 3 percent of adjusted gross income.